UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH PEACOCK,

              Petitioner,              CIVIL ACTION NO. 07-12215

      v.                      DISTRICT JUDGE LAWRENCE P. ZATKOFF

JERI ANN SHERRY,            MAGISTRATE JUDGE VIRGINIA M. MORGAN

              Respondent.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

       This 28 U.S.C. § 2254 case comes before the Court on Petitioner's Application for Writ of Habeas Corpus (D/E #1). For the reasons stated below, the Court recommends that petitioner's application for a writ of habeas corpus be **DENIED**.

### II. Background

       For ease of reference, the transcripts provided by the parties in this case will be referred to as follows:

                    Tr I   =      Preliminary Examination, March 14, 2005; attached as Exhibit #3 to D/E #8

                    Tr II  =      Final Conference, June 24, 2005; attached as Exhibit #4 to D/E #8

                    Tr III =      Plea, July 6, 2005; attached as Exhibit #6 to D/E #8

-1-

Tr IV   =   Post Conviction Hearing, March 29, 2006; attached
as Exhibit #8 to D/E #8

Tr V   =   Post Conviction Hearing, May 8, 2006; attached as
Exhibit #9 to D/E #8

Petitioner was originally arrested and charged with second-degree murder, felony

firearm, and felon in possession of a firearm.  Petitioner was also charged with being a third

habitual offender.  (Register of Actions, attached as Exhibit #2 to D/E #8)

At the preliminary examination, three witnesses testified regarding a shooting that

occurred on May 26, 2004.  Denise Cannon-Signal testified that, on that date around 2:00 a.m.,

she was at a house at 2320 Cortland, in the city of Detroit.  (Tr I, pp. 6-7)  According to

Cannon-Signal, she was inside the house and could hear petitioner and Roderick Mosley arguing

outside, with petitioner saying at one point: "man, don't make me have to shoot you."  (Tr I, pp.

7-8)  Cannon-Signal also testified that Mosley came inside the house (Tr I, p. 9), and that

petitioner later came by and knocked on the door asking Mosley why Mosley was "playing"

petitioner (Tr I, pp. 9-10).  According to Cannon-Signal, her boyfriend Donald Blevins refused

to let petitioner in and petitioner continued to speak angrily through the door before leaving.

(Tr. I, pp. 10, 12)

Cannon-Signal testified that petitioner soon returned and knocked on the door while

asking Mosley to come outside, and that Mosley went outside.  (Tr I, p. 13)  Cannon-Signal also

testified that she went from the dining room to the front door and could observe what was going

on outside.  (Tr I, pp. 31, 33-35)  According to Cannon-Signal, she observed petitioner and

Mosley argue on the front porch before petitioner stepped back and shot Mosley.  (Tr I, p. 15)

-2-

Cannon-Signal testified that petitioner aimed the gun at Mosley's chest before firing.  (Tr I, p. 17)  Cannon-Signal also testified that, after Mosley was shot, he struggled with petitioner while calling Blevins' name (Tr I, pp. 16, 26) and that a second shot was fired (Tr I, p. 16).  Cannon-Signal further testified that, after Blevins told petitioner that the police were on the way, petitioner dropped the gun and left.  (Tr I, p. 17)  According to Cannon-Signal, she later observed petitioner's brother pick up the gun and run away.  (Tr I, p. 18)  Cannon-Signal also testified that she suffered a head injury subsequent to the shooting and that, while she does not "remember everything at the same time," her memory is fine.  (Tr I, pp. 21-22)

Monique Kitchen testified that she lived across the street from 2320 Cortland and that, around 2:00 a.m. on May 26, 2004, her son woke her up after he heard some fighting and a gunshot.  (Tr I, p. 38)  Kitchen also testified that she looked across the street and observed petitioner and Mosley "wrestling" by a  fire hydrant.  (Tr I, p. 38)  Kitchen did not see any weapons.  (Tr I, p. 40)  Kitchen further testified that, after the wrestling stopped, Mosley stood up and tried to say something, but he could not speak and only gargled.  (Tr I, p. 39)  However, Kitchen also testified that her statement to the police reported that Mosley said "you shot me, don't shoot me no more" and that her statement to the police was the truth.  (Tr I, p. 41)

Donald Blevins testified at the preliminary examination that he was at 2320 Cortland around 2:00 a.m. on May 26, 2004, when Mosley came over.  (Tr I, p. 48)  Blevins also testified that petitioner came over later and asked to see Mosley, but Blevins did not let petitioner into the house.  (Tr I, pp. 48-49)  Blevins further testified that Mosley went outside and Blevins shut the front door.  (Tr I, p. 49)  According to Blevins, the front door was still shut when he heard a

gunshot and someone calling his name.  (Tr I, pp. 50, 55)  Blevins testfied that he then went

outside and saw, on the grass by a fire hydrant, Mosley on top of petitioner.  (Tr I, pp. 51, 56)

Blevins also testified that petitioner had a gun in his hand and that Mosley said that petitioner

shot him.  (Tr I, p. 52)  Blevins further testified that he kicked the gun out of petitioner's hand.

(Tr I, p. 52)  According to Blevins, he left before the police arrived.  (Tr I, p. 57)

At the preliminary examination, the parties also stipulated that petitioner had been

convicted on April 7, 1999, of carrying a concealed weapon and that, for purposes of the felon in

possession charge, the five year period in which petitioner could regain eligibility to possess a

firearm had not elapsed by the date of the shooting.  (Tr I, p. 36)  On the basis of the evidence

presented, the prosecutor asked the trial court to consider first-degree murder.  (Tr I, p. 58)

Defense counsel argued that, while there was a question of fact as to second-degree murder,

there was insufficient evidence to support a charge of first-degree murder.  (Tr I, p. 61)  The trial

court bound petitioner over on first-degree murder after finding that there was probable cause to

believe that the offense was committed and the petitioner committed it.  (Tr I, p. 61)

At the final conference on June 24, 2005, the prosecutor informed the court that, while

defense counsel had been very diligent in her requests for a plea offer, the prosecutor only made

such an offer on June 23, 2005.  (Tr II, p. 3)  Defense counsel stated that she had only been able

to communicate the offer to petitioner on the day of the final conference, and that she had

indicated to petitioner that she would come over soon to discuss the offer after making the court

aware that they would need additional time.  (Tr II, p. 4)  Defense counsel also stated that

petitioner had told her he wanted a new attorney.  (Tr II, p. 4)  Petitioner told the court that his

-4-

lawyer had been unprofessional because she had not visited him since January and she had not

responded to calls from his family.  (Tr II, p. 5)  According to defense counsel, when she and

petitioner had last spoke, she had indicated that the next time she would see petitioner would be

to discuss an offer or, if petitioner did not want to take the offer, to prepare for trial.  (Tr II, p. 5)

The trial court found that there was no basis for removing defense counsel because the delay in

getting an offer from the prosecution was not defense counsel's fault and there was only

something for defense counsel to discuss with petitioner after the offer was made.  (Tr II, p. 7)

The trial court also adjourned the final conference until July 1, 2005, in order to allow petitioner

time to think about the offer.  (Tr II, p. 9)[1]

On July 6, 2005, petitioner entered a plea.  The following exchange occurred before the

plea was entered:

> **Prosecutor**: Your Honor, in exchange for a plea of guilty to
> second degree murder and felony firearm, the People would reduce
> Count 1 of the amended information from murder one to murder
> two, Mr. Peacock would plea as charged on Count 2, the People
> would dismiss Count 3, felony – felon in possession rather and
> withdraw the notice of enhancement, habitual third offender, in
> exchange for a plea of guilty to murder second degree and felony
> firearm with a sentence agreement within the agreed upon
> guidelines of 20 to 40 on the murder two and consecutive to the
> two years on the felony firearm.  Mr. Peacock's guidelines are a
> level C-2 which is 180 to 300 months or life.
>
> **Court**: All right. [Defense Counsel], that's your understanding of
> the plea and sentence agreement in this matter?
>
> **Defense Counsel**: Yes, it is, your Honor.

---

[1]Petitioner also stated that he never received any discovery packages while defense
counsel stated she had given them to him.  (Tr II, p. 6)  The trial court told defense counsel to
provide the discovery packages again and defense counsel agreed to do so.  (Tr II, p. 7)

**Court**: And, Mr. Peacock, is this what you want to do?

**Petitioner**: Yes, your Honor? [sic]

**Court**: All right.  Raise your right hand, please.

**The Clerk**: Do you solemnly swear or affirm that the testimony you're about to give in the matter now pending before the court will be the whole truth so help you God?

**Petitioner**: Yes.

**The Clerk**: Thank you.

**Court**: All right, now Mr. Peacock, you're charged with first degree murder and felony firearm.  You're scheduled to go to trial in my courtroom on July 13th, this Wednesday.  And you understand that by pleading guilty today you're automatically convicted of second degree murder and felony firearm without a trial?

**Petitioner**: Yes, your Honor.

**Court**: And you understand you've got a right to your trial if you want.  You understand that?

**Petitioner**: Yes, your Honor.

**Court**: And if you had your trial, during the course of the trial you would have been presumed innocent until proven guilty beyond a reasonable doubt.  Do you understand that?

**Petitioner**: Yes, your Honor.

**Court**: And you understand that it's the prosecutor's job to prove you guilty beyond a reasonable doubt, you don't have to do anything to prove your innocence.  You understand that?

**Petitioner**: Yes, your Honor.

**Court**: And in the process of trying to prove you guilty, the prosecutor would call witnesses to testify against you, but you would have a right to question or cross-examine those witnesses through your attorney.  You understand that?

**Petitioner**: Yes, your Honor.

**Court**: And you understand that you could call witnesses on your side of the case if you wanted to in a trial as well?

**Petitioner**: Yes, your Honor.

**Court**: And you understand also that you could even ask me as the judge to order witnesses to appear for you?

**Petitioner**: Yes, your Honor.

**Court**: And if you had a trial you could tell your side of the story if you wanted to, but you have a guaranteed right to remain silent which means that you don't have to testify and no one can make you testify and if you choose not to testify no one can comment on or criticize you for that and your jury would be told, if you had a jury trial, they could not take that into account in deciding whether you were guilty or not guilty.  You understand that?

**Petitioner**: Yes, your Honor.

**Court**: And you could have your case decided by a jury which means that all 12 jurors would have to agree unanimously on any verdict that they rendered in your case, but you could have your case decided by a judge without a jury if you wanted to.  Do you understand that?

**Petitioner**: Yes, your Honor.

**Court**: You understand that by pleading guilty you're giving up all those rights?

Petitioner: Yes, your Honor.

**Court**: Now, besides the plea and sentence agreement which has been put on the record by [the prosecutor], has anybody promised

-7-

you anything else or threatened you or twisted your arm in any way to get you to give up your rights to a trial and plead guilty?

**Petitioner**: No, your Honor.

**Court**: You're doing this freely and voluntarily?

**Petitioner**: Yes, your Honor.

**Court**: All right. Tell us exactly what it is you did on May the 26th, 2004, at 2320 Cortland in the City of Detroit to Roderick Mosley that makes you believe you committed the crime of second degree murder and felony firearm.

**Petitioner**: I just shot him, your Honor.

**Court**: You shot him. And when you shot him, do you claim that you were acting in self-defense?

**Petitioner**: Yes, your Honor.

**Court**: Well, then we can't take your plea.

**Petitioner**: No, your Honor.

**Court**: Well, why did you say yes?

**Petitioner**: Because I ain't understand your question.

**Court**: All right. You don't claim that you were acting in self-defense?

**Petitioner**: No, your Honor.

**Court**: Why did you shot him?

**Petitioner**: Because I was angry at him.

**Court**: You were angry at him. All right. Do you want to voir dire at all?

-8-

**Prosecutor**: Yes, your Honor. I believe counsel and I have spoken. Counsel would stipulate that at the time of the shooting Mr. Roderick Mosley was unarmed at that time.

**Defense Counsel**: Yes, your Honor.

**Prosecutor**: In addition, the stipulation would be that in the autopsy of Mr. Mosley performed by Dr. Diaz, D-I-A-Z, of the ME's office, reference ME Case No. 04-04917, Mr. Mosley was shot with – Mr. Mosley's death was due to a single contact gunshot wound to the chest. There was evidence of soot deposition in the depth of the wound consistent with a contact gunshot wound and the manner of his death was a homicide.

**Defense Counsel**: So stipulated, your Honor.

**Court**: Do you agree, Mr. Peacock, that the victim in this case was not armed at the time you shot him?

**Petitioner**: No, he wasn't.

**Court**: All right. You shot him in the chest?

**Petitioner**: Yes, your Honor.

**Court**: All right. Satisfied the factual basis is made out?

**Prosecutor**: Yes, your Honor.

**Court**: Satisfied, [defense counsel]?

**Defense Counsel**: Yes, your Honor.

**Court**: All right. I'm satisfied as well. I'll take the defendant's plea of guilty to second degree murder and felony firearm and we'll schedule a sentencing date in about two weeks. [Tr III, pp. 3-9]

On July 26, 2005, petitioner was sentenced, in accordance with the plea agreement, to a prison term of 20-to-40 years for the murder conviction, consecutive to a 2 year term for the felony firearm conviction.  (Sentencing, attached as Exhibit #6 to D/E #8)

Following sentencing, petitioner filed a motion to withdraw his plea and the trial court held a hearing on that motion on March 29, 2006.  At the hearing, the new defense attorney asserted that petitioner had made a offer of proof that there was a breakdown with his previous attorney, they were not getting along, and that she had not visited him in prison or provided him with discovery.  The new defense attorney also argued that petitioner's plea had not been voluntary because it was made under duress and pressure from defense counsel after she told him that he was not going to win, was not going to see his family again, and was going to prison for the rest of his life.  The new defense attorney further argued that petitioner had wanted to plead self-defense.  (Tr IV, pp. 3-4, 6)  The trial court decided to delay its decision on the motion until it had reviewed the evidence.  (Tr IV, p. 11)

On May 8, 2006, the trial court held a second hearing on petitioner's motion to withdraw his plea.  At that hearing, the trial court stated that it had gone through the police evidence, the police reports, the witness statements and portions of the preliminary examination transcript, and that it found that petitioner's self-defense claim was not held up by the evidence that might have been presented at trial.  (Tr V, p. 4)  The trial court also indicated that it doubted petitioner's claim that he had never received any discovery materials and stated that:

> even if it were true, I don't know how discovery materials that he wanted could have assisted him in any way advancing a defense, because I have looked at the discovery materials that he claims he

-10-

> never got, and they don't in any way shape or form support his
> defense.  In fact, they're very incriminating. [Tr V, p. 11]

The trial court then denied petitioner's motion to withdraw his plea.  (Tr V, p. 12)

On or about May 30, 2006, petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals in which he argued that the trial court abused its discretion in denying petitioner's motion to withdraw his plea and, thereby, denied petitioner his constitutional right to due process of law.  (Petitioner's Brief in Support of his Delayed Application for Leave to Appeal, attached as pp. 28-42 of D/E #1).  On August 4, 2006, the Michigan Court of Appeals denied leave to appeal for "lack of merit in the grounds presented." (People v Peacock, Michigan Court of Appeals No. 270706, attached as Exhibit #9 to D/E #8)

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court on September 21, 2006, asserting the same claim that was raised in the Michigan Court of Appeals. On November 29, 2006, the Supreme Court denied leave because the Court was "not persuaded that the question presented should be reviewed."  (People v. Peacock, 477 Mich. 950, 950 (2006) (table); attached as Exhibit #10 to D/E #8)

On May 22, 2007, petitioner filed the petition for writ of habeas corpus in this case (D/E #1).  In that petition, petitioner again argues that his trial counsel was ineffective for failing to consult with him, disclose evidence, or discuss the evidence against him.  Petitioner also argues that his trial counsel was ineffective due to the atmosphere of coercion and adversity that existed between petitioner and his attorney just prior to entering his plea.

On November 26, 2007, the respondent filed a response to the petition (D/E #17).  In that response, respondent argues that, by voluntarily entering a plea to the charges against him,

petitioner is precluded from asserting that defense counsel was ineffective.  Respondent also
argues that petitioner's argument is without merit because his plea was knowingly and
voluntarily made.

On June 16, 2006, this matter was referred to this Court for a Report and
Recommendation on the petition for writ of habeas corpus (D/E #9).


**III. Standard of Review**

Petitioner is not entitled to the writ of habeas corpus unless he can show that the state
court's adjudication of his claims on the merits "(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established Federal law, as determined by the
Supreme Court of the United States; or (2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence presented in the State court
proceeding."  28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court
arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if
the state court decides a case differently than [the Supreme] Court has on a set of materially
indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A state court's
decision is an "unreasonable application of" clearly established federal law "if the state court
identifies the correct governing legal principle from [the Supreme] Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at
413.  "Avoiding these pitfalls does not require citation of [Supreme Court] cases-indeed, it does

-12-

not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the

result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per

curiam opinion) (emphasis in original).

## IV. Discussion

The right to the effective assistance of counsel is guaranteed by the Sixth Amendment to

the United States Constitution. Maples v. Stegall, 340 F.3d 433, 437 (6th Cir. 2003) (citing Roe

v. Flores-Ortega, 528 U.S. 470, 476, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). A petitioner must

satisfy a two-prong test to prevail on an ineffective-assistance-of-counsel claim. First, the

petitioner must show that the performance of counsel fell "below an objective standard of

reasonableness." Strickland v. Washington, 466 U.S. 668, 687-94, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984). In so doing, the petitioner must rebut the presumption that counsel's "challenged

action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal quotation

marks omitted). In evaluating an ineffective-assistance-of-counsel claim, a court strongly

presumes that counsel has "rendered adequate assistance and made all significant decisions in

the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. As a result,

petitioners alleging ineffective assistance of counsel bear "a heavy burden of proof." Whiting v.

Burt, 395 F.3d 602, 617 (6th Cir. 2005).

Second, the petitioner alleging the ineffective assistance of counsel must demonstrate

prejudice. Strickland, 466 U.S. at 694. The Supreme Court has developed a specific standard

that defendants who plead guilty must meet to demonstrate prejudice with respect to their

representation by counsel. Such a defendant "must show that there is a reasonable probability

-13-

that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted

on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). See

also Short v. U.S., 471 F.3d 686, 691-692 (6th Cir. 2006).[2]   Conversely, in the context of a

rejected plea offer, the defendant must show a "reasonable probability that, but for the

incompetence of counsel, he would have accepted" the plea. Turner v. State, 858 F.2d 1201,

1206 (6th Cir. 1988) (vacated on other grounds). Moreover, "the resolution of the 'prejudice'

inquiry will depend largely on whether the affirmative defense likely would have succeeded at

trial." Hill, 474 U.S. at 59. Under the Sixth Circuit's interpretation of Hill, "the court must

always analyze the substance of the petitioner's underlying claim, and that this inquiry will be

dispositive to the resolution of the habeas action 'in many guilty plea cases.'" Maples, 340 F.3d

at 440 (quoting Hill, 474 U.S. at 59). According to the Sixth Circuit, its interpretation of Hill is

preferable for two reasons:

> First, it is more in line with this court's analysis of an
> ineffective-assistance-of-counsel claim under Strickland, which
> inevitably engages in a substantive inquiry into the petitioner's
> claims. *E.g.*, Carter v. Bell, 218 F.3d 581, 597-600 (6th Cir. 2000)
> (holding that the habeas petitioner had demonstrated prejudice
> stemming from his counsel's ineffective assistance after analyzing
> the merits of petitioner's underlying claim). Second, Hill, like the
> case before us, involved a situation where the petitioner's

_____

[2]The Supreme Court has held that under certain egregious circumstances, however, a
defendant can assert a "per se" ineffective-assistance claim in which the court will presume
prejudice. Hunt v. Mitchell, 261 F.3d 575, 582 (6th Cir. 2001) (citing United States v. Cronic,
466 U.S. 648, 658-59, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). Those circumstances include the
actual or constructive denial of assistance "when counsel was either totally absent, or prevented
from assisting the accused during a critical stage of the proceeding." Cronic, 466 U.S. at 659 n.
25, 104 S.Ct. 2039. "In addition, if counsel is burdened by an actual conflict of interest, then a
more limited presumption of prejudice applies." Short, 471 F.3d at 693. None of those
egregious circumstances are present in this case.

-14-

ineffective-assistance-of-counsel claim stemmed from trial counsel's affirmative misrepresentation to the defendant who subsequently pled guilty.  Id. at 54, 106 S.Ct. 366 (describing how petitioner's counsel misrepresented the amount of time that the petitioner would be required to serve in prison before he was eligible for parole).

We acknowledge that the Supreme Court in Hill did not itself inquire into the substance of the petitioner's claim, but this was only because Hill did not clear the first hurdle of stating that he would have proceeded to trial but for his counsel's errors.  Id. at 60, 106 S.Ct. 366 ("Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial.").  Presumably, the Court in Hill discussed the importance of inquiring into the merits of a petitioner's underlying claim because it intended for lower courts to conduct such an analysis where, as here, the petitioner's counsel made an affirmative misrepresentation upon which the petitioner reasonably relied in deciding to plead guilty. [Maples, 340 F.3d at 440.]

### A. Whether counsel's performance fell below an objective standard of reasonableness

With respect to the first prong, petitioner alleges that his trial counsel's performance fell below an objective standard of reasonableness because she failed to consult with him, failed to disclose or discuss the evidence against him, and created an atmosphere of coercion and adversity by threatening petitioner with life imprisonment and disbelieving petitioner's innocence.  However, petitioner fails to meet his burden of proof for any of those allegations.

Regarding the alleged failure to consult or discuss evidence with petitioner, the record indicates that trial counsel had advised petitioner that they would speak after she received an offer from the government in order to discuss the offer or, if petitioner did not want to take the offer, to prepare for trial (Tr II, p. 5) and while there was some delay in receiving the offer, it

-15-

was not the fault of trial counsel.  (Tr II, pp. 3, 7).  Moreover, given the delay, the trial court

adjourned the final conference in order to give petitioner more time.  (Tr II, p. 9)  In light of the

delay on the part of the prosecution and the extra time granted by the trial court, trial counsel's

decision to delay meeting with petitioner until after the government made its offer was not a

performance that fell below an objective standard of reasonableness.

Regarding the alleged failure to disclose evidence, petitioner stated at the final

conference that he never received any discovery packages while trial counsel stated she had

given them to him.  (Tr II, p. 6)  No evidence was submitted in support of either argument and

the trial court merely told trial counsel to provide the discovery packages again and trial counsel

agreed to do so.  (Tr II, pp. 6-7)  Petitioner later argued, at his motion to withdraw his plea, that

the trial counsel again failed to provide him with the discovery packages (Tr IV, pp. 3-4, 6), but

there is no evidence of that beyond the arguments made on the record.  Given the lack of

evidence supporting plaintiff's allegation that trial counsel failed to provide him with discovery,

he has failed to meet his burden of showing that trial counsel's performance fell below an

objective standard of reasonableness.

Regarding the alleged atmosphere of coercion and adversity, petitioner argues, without

support, that trial counsel threatened him with life imprisonment and disbelieved petitioner's

innocence.  However, petitioner never made these allegations on the record at either his plea or

his sentencing hearings.  Instead, petitioner testified at his plea that he was aware of the terms of

the plea offer the prosecution was extending to him, he had agreed to give up various rights he

had prior to entering the plea, and that no one had promised anything else, threatened him or

-16-

twisted his arm in any way to get him to plead guilty.  Petitioner also acknowledged that he was entering his plea freely and voluntarily as well.  (Tr I, pp. 3-9)  Moreover, as noted by respondent, if the trial counsel told petitioner that he was facing life imprisonment if he did not accept the plea, such statements were statements of reality given that petitioner could have been sentenced to up to life in prison if found guilty.  That potential sentence and petitioner's own testimony contradict his claim that trial counsel created an atmosphere of coercion and adversity and petitioner has failed to establish that trial counsel's performance fell below an objective standard of reasonableness on that basis.

As discussed above, petitioners alleging ineffective assistance of counsel bear "a heavy burden of proof."  Whiting, 395 F.3d at 617.  In this case, petitioner has failed to meet that burden with respect to all his allegations that trial counsel's performance fell below an objective standard of reasonableness.

### B. Prejudice

### 1. Decision to Plead Guilty

If petitioner is able to show that trial counsel's performance fell below an objective standard of reasonableness, he would then have to demonstrate prejudice resulting from trial counsel's errors.  As discussed above, in order to demonstrate prejudice, a defendant such as petitioner, who has plead guilty, "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial."  Hill, 474 U.S. at 59, Short, 471 F.3d at 691-692.  In this case, petitioner does not point to anything specific that would have changed his decision to plead guilty had trial counsel

-17-

consulted with him, disclosed evidence or not created a coercive atmosphere.  Petitioner did

initially testify at his plea that he acted in self-defense and he has repeatedly asserted in his

motion to withdraw his plea, his state appeals and his petition for writ of habeas corpus that he

wanted to go to trial.  However, petitioner also testified, while making his plea, that he only said

he acted in self-defense because he did not understand the court's question and he clearly

received benefits from the plea given that he could have been sentenced to up to life in prison if

he did not accept the plea agreement and his status as a third habitual offender was removed

from the record.

Additionally, while petitioner asserts that trial counsel's failure to provide discovery

materials led petitioner to take a plea instead of proceeding to trial, it does not appear that any of

the discovery materials trial counsel would have provided support a self-defense claim.  The

only evidence in the record before this Court is the preliminary examination transcript and, while

there were inconsistencies between the testimony of the witnesses at the preliminary hearing,

most notably in how many shots were fired and whether the shooting took place on the front

porch or by a fire hydrant, there was no testimony supporting petitioner's claim of self-defense.

Cannon-Signal observed petitioner argue with Mosley, aim a gun at Mosley's chest and fire.

Kitchen and Blevins observed a struggle, but only after hearing or being told about the gunshot

they did not observe.  Both Kitchen and Blevins heard Mosley declare, after he had been fatally

wounded, that petitioner shot him.  Moreover, the trial court reviewed the police evidence, the

police reports, the witness statements and portions of the preliminary examination transcript and

it found that the discovery materials were very incriminating and did not support petitioner's defense.

In light of that lack of evidentiary support found in the discovery materials and the benefits petitioner received from the plea agreement, this Court finds that petitioner has failed to demonstrate that he would have proceeded to trial had counsel provided the discovery materials to petitioner, consulted with petitioner, and not created an atmosphere of coercion and adversity.

**2. Substance of the Petitioner's Underlying Claim**

Assuming that petitioner could establish both that trial counsel's performance fell below an objective standard of reasonableness and that he would have proceeded to trial but for trial counsel's performance, the prejudice inquiry will also "depend largely on whether the affirmative defense likely would have succeeded at trial," Hill, 474 U.S. at 59, and "the court must always analyze the substance of the petitioner's underlying claim." Maples, 340 F.3d at 440 (quoting Hill, 474 U.S. at 59). In this case, even assuming that trial counsel's performance fell below an objective standard of reasonableness and that petitioner only plead guilty because of trial counsel's errors, there is nothing in the record to indicate that there is any merit to petitioner's self-defense claim. As discussed above, the only evidence in the record before this Court is the preliminary examination transcript and there is very little in that transcript supporting petitioner's claim of self-defense. Similarly, the trial court found nothing in the police evidence, the police reports, the witness statements and portions of the preliminary examination transcript supporting petitioner's defense. Petitioner fails to point to any evidence supporting his self-defense claim and that defense likely would have failed at trial. Given the

lack of merit in petitioner's underlying claim, he was not prejudiced by any errors made by trial counsel and his petition should be denied even if trial counsel's performance fell below an objective standard of reasonableness and that petitioner would have proceeded to trial but for trial counsel's performance.


### IV. Conclusion

For the reasons stated above, the court recommends that petitioner's application for a writ of habeas corpus be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: January 9, 2009

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing report and recommendation regarding habeas petition was
served upon counsel of record and Petitioner via the Court's ECF System and/or U. S. Mail on January 9,
2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan